**KAZEROUNI LAW GROUP, APC**
Abbas Kazerounian, Esq. (SBN: 249203)
ak@kazlg.com
Jason A. Ibey, Esq. (SBN: 284607)
jason@kazlg.com
Nicholas R. Barthel, Esq. (SBN: 319105)
nicholas@kazlg.com
245 Fischer Avenue, Unit D1
Costa Mesa, California 92626
Telephone: (800) 400-6808
Facsimile:  (800) 520-5523

[Additional Counsel On Signature Page]

*Attorneys for Plaintiff*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| STEVEN PERDEW, Individually and On Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>CAPITAL ONE BANK (USA), N.A.,<br><br>Defendant. | Case No.: **'19CV1421 BEN BLM**<br><br>**CLASS ACTION COMPLAINT FOR DAMAGES FOR VIOLATIONS OF:**<br><br>I.   CAL. CIV. CODE § 1798.81.5;<br><br>II.  CAL. BUS. PROF. CODE §§ 17200, *ET SEQ.*;<br><br>III. NEGLIGENCE<br><br><br>**JURY TRIAL DEMANDED** |

The plaintiff STEVEN PERDEW ("Plaintiff" or "Mr. Perdew"), brings this Class action complaint on behalf of himself individually and all others similarly situated, by and through their attorneys, against Defendant CAPITAL ONE BANK (USA), N.A. ("Capital One" or "Defendant") and allege upon information and belief as follows:

## INTRODUCTION

1. Plaintiff makes these allegations on information and belief, with the exception of those allegations that pertain to Plaintiff, or to Plaintiff's counsel, which Plaintiff alleges on personal knowledge.

2. While many violations are described below with specificity, this Complaint alleges violations of each statute cited in its entirety.

3. Unless otherwise indicated, the use of Defendant's name in this Complaint includes all agents, employees, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subrogees, representatives, and insurers of the Defendant.

4. To ensure that that personally identifiable information ("PII") about California residents is protected, the California legislature enacted California Civil Code § 1798.81.5. The creation of this bill provided Plaintiff, and all other persons similarly situated within the United States, a right to keep their personal information maintained by Defendant confidential.

5. Under this title, businesses, including Defendant, are required to implement and maintain reasonable security procedures and practices appropriate to the nature of the information, to protect the personal information from unauthorized access, destruction, use, modification, or disclosure. Cal. Civ. Code § 1798.81.5.

6. As alleged in greater detail below, on July 19, 2019, Defendant determined that there had been an unauthorized access to the personal data of individuals that had applied for a credit card between 2005 and early 2019.

7. Defendant has neglected its duty to do so and has allowed unauthorized access to its customers' PII, including, but not limited to, social security numbers, names, consumer credit scores, bank account numbers, date of birth, self-reported income, addresses, telephone numbers, and email address.

8. Upon information and belief, this was the result of Defendant's cyber security has been substantially deficient, resulting in a clear violation of Cal. Civ. Code § 1798.81.5, among other laws.

9. Notwithstanding this failure to abide by its statutory duty, Defendant continued to represent itself as a company that has "[s]afeguards [] in place to protect your information."[1]

## JURISDICTION AND VENUE

10. This Court has subject matter jurisdiction over this action under 28 U.S.C. § 1332(d) of the Class and Subclass Action Fairness Act ("CAFA") because the amount in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs, with at least one member of the proposed Class and Subclass being a citizen of a different state than Defendant.

11. This Court has personal jurisdiction over Defendant because Defendant conducts business in California and maintains sufficient contacts with the state.

12. Venue is appropriate in the United States District Court for the Central District of California pursuant to 28 U.S.C. § 1391 for the following reasons:
    (i) Plaintiff resides in San Diego County, California which is within this judicial district;
    (ii) the injury to Plaintiff occurred within this judicial district; and,
    (iii) Defendant conducted business within this judicial district at all relevant times.

---

[1] *Bank Securely*, Capital One, https://www.capitalone.com/applications/identity-protection/commitment/#2_pg_sl

## PARTIES

13. Mr. Perdew is a resident and citizen of San Diego County in the State of California.

14. Defendant is incorporated under the laws of the State of Virginia with its principal place of business and headquarters located in Fairfax County, Virginia.

15. Upon information and belief, Defendant is one of largest banking institutions with a reported $249.8 billion in deposits as of December 31, 2018.

16. Defendant extends consumer credit cards nation-wide.

## NATURE OF THE CASE

17. Plaintiff re-alleges and incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

18. Beginning sometime before July 2019, Capital One began storing customer data on cloud servers in Amazon Web Services' ("AWS") popular data storage software Simple Storage Service.

19. Capital One has been one of the most vocal advocates for using cloud services among banks. The lender has said it is migrating an increasing percentage of its applications and data to the cloud and plans to completely exit its data centers by the end of 2020 -- a move the company says will help lower costs.

20. In utilizing AWS' data servers, Capital One built its own web application on top of AWS' cloud data so that Capital One could use the information in ways specific to its needs.

21. According to AWS, Capital One had full control over the construction of this application.

22. Sometime between March 12 and July 17, 2019, a hacker was able to access Capital One's data through a misconfiguration of a firewall on Capital One's web application.

23. This hole allowed the hacker to communicate with the servers where Capital One was storing its information. Thus, providing the hacker with access to consumer files.
24. For example, one command executed in the firewall hack allowed the hacker to gain credentials for an administrator account known as *****WAF-Role. The command in turn enabled access to bank data stored by AWS' at Capital One's instruction.
25. Other commands allowed the hacker to enumerate Capital One's folders and copy the content inside each folder.
26. Once the hacker had the consumers' information, it has been confirmed that the hacker had shared the data with at least one other individual and posted sensitive data on Github, a social networking site for programmers.
27. Capital One is no stranger to data breaches. In 2017 and 2014, Capital One had two separate occasions where individuals gained unauthorized and inappropriate access to consumer data including, social security numbers and account numbers.
28. In cycle fashion, Capital One has yet again allowed for an unauthorized third-party to access consumer data due to Capital One's misconfiguration of its security system.

## FACTUAL ALLEGATIONS

29. Plaintiff incorporates by reference all the above paragraphs of this complaint as if fully stated herein.
30. On or about July 25, 2012, Plaintiff opened a credit card with Capital One Bank.
31. Shortly before the account was opened, Plaintiff provided Capital One with a credit card application.

32. According to Capital One, the largest category of information accessed in the breach was information on consumers' credit card applications filed between 2005 and early 2019.

33. Upon information and believe, Capital One allowed Plaintiff's PII that was on his credit card application to be vulnerable and accessible. This PII includes his name address, zip code, phone number, email address, date of birth, self-reported income, credit score, and his social security number.

34. Upon information and belief, Plaintiff's PII has been shared with third parties and is now accessible on the web.

35. Plaintiff's PII would not have been accessed and exposed if it were not for Capital One's negligence and lack of reasonable measures in designing its web application.

36. Plaintiff reasonably expected that Defendant would take reasonable measures to ensure data security of sensitive information, and had Plaintiff known that his information would be compromised, he would not have eaten at Defendant's restaurant.

37. As of the filing of this Complaint, Defendant has not provided Plaintiff with actual notice of the existence of the data breach.

## CHOICE OF LAW

38. Plaintiff re-alleges and incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

39. The State of California has sufficient interest in the conduct at issue in this complaint, such that California law may be uniformly applied to the claims of the proposed Class.

40. Defendant does substantial business in California, and a significant portion of the proposed nationwide Class and California Subclass members are located in California. There are 4,969 ATM locations in California.

41. Defendant avails itself to these California citizens by soliciting directly to them.
42. The State of California also has the greatest interest in applying its law to Class and Subclass members' claims. California's governmental interests include not only compensating resident consumers under its consumer protection laws, but also what the State has characterized as a "compelling" interest in using its laws to preserve a business climate free of unfair and deceptive practices. *Diamond Multimedia Sys. v. Sup. Ct.*, 19 Cal. 4th 1036, 1064 (1999). Moreover, the State has expressly demonstrated an interest in protecting California consumers' personal information, as well as encouraging California business to provide reasonable security to protect consumer information. *See* Cal. Civ. Code § 1798.81.5(a)(1).
43. If other states' laws were applied to Class and Subclass members' claims, California's interest in discouraging resident corporations from engaging in the sort of unfair and deceptive practices alleged in this complaint would be significantly impaired. California could not effectively regulate a company like Capital One, which does business throughout the United States, if it can only ensure remuneration for consumers from one of the 50 states affected by conduct that runs afoul of its laws.

## CLASS ACTION ALLEGATIONS

44. Plaintiff re-alleges and incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.
45. Plaintiff brings this action on behalf of himself individually and on behalf of all others similarly situated, pursuant to Federal Rule Civil Procedure 23(b)(1), (b)(2) and/or (b)(3).
46. The putative Class ("the Class") that Plaintiff seeks to represent is composed of:

> All persons within the United States who applied for a Capital One consumer credit cards since 2005.

47. The putative Subclass ("the Subclass") that Plaintiff seeks to represent is composed of:

> All persons within the California who applied for a Capital One consumer credit cards since 2005.

48. Excluded from the Class and Subclass are any of Defendant's officers, directors, employees, affiliates, legal representatives, attorneys, heirs, and assigns, and any entity in which Defendant has a controlling interest. Judicial officers presiding over this case, its staff, and immediate family members, are also excluded from the Class and Subclass.

49. The members of the Class and Subclass are so numerous that joinder of all members is impracticable. While the exact number of the Class and Subclass members is unknown to Plaintiff at this time, Capital One has suspected it includes around 100 million individuals.

50. There is a well-defined community of interest among the members of the Class and Subclass because common questions of law and fact predominate, Plaintiff's claims are typical of the members of the Class, and Plaintiff can fairly and adequately represent the interests of the Class.

51. Common questions of law and fact exist as to all members of the Class and Subclass and predominate over any questions affecting solely individual members of the Class. Among the questions of law and fact common to the Class and Subclass are:

   a) Whether Plaintiff and the Class and Subclass had their private and confidential information accessed due to Defendant's misconfiguration in its web application's firewall;

b) Whether Defendant failed to implement and maintain reasonable security procedures and practices appropriate to the nature of the information, to protect the personal information from unauthorized access, destruction, use, modification, or disclosure as required by Cal. Civ. Code § 1798.81.5(b);

c) Whether Plaintiff and the Class and Subclass are entitled to damages under Cal. Civ. Code § 1798.84(b); and

d) Whether Defendant's claims and representations, as alleged herein, are untrue, misleading, and/or reasonably likely to deceive the average consumer;

e) Whether Defendant's conduct is an unfair, fraudulent, or unlawful act or practice within the meaning of California Business & Professions Code §§ 17200, *et seq.*;

f) Whether Defendant acted negligently in creating its firewall;

g) Whether Defendant, through its conduct, received money that, in equity and good conscience, belongs to Plaintiff and members of the Class;

h) Whether Plaintiff and the putative Class and Subclass members are entitled to equitable relief, including but not limited to restitution and/or disgorgement of ill-gotten gains; and

i) Whether Plaintiff and the putative Class and Subclass members are entitled to injunctive relief as sought herein.

52. Plaintiff's claims are typical of those of the other Class and Subclass members because Plaintiff, like every other Class and Subclass member, provided PII for similar purposes and had their PII exposed through malware installed on Defendant's POS systems.

53. Plaintiff will fairly and adequately protect the interests of the Class and Subclass. Moreover, Plaintiff has no interest that is contrary to or in conflict

with those of the Class and Subclass he seeks to represent during the Class and Subclass Period.

54. Plaintiff has retained competent counsel experienced in Class and Subclass action litigation to further ensure such protection and intend to prosecute this action vigorously.

55. The prosecution of separate actions by individual members of the Class and Subclass would create a risk of inconsistent or varying adjudications with respect to individual members of the Class, which would establish incompatible standards of conduct for the Defendant in the State of California and would lead to repetitious trials of the numerous common questions of fact and law in the State of California. Plaintiff knows of no difficulty that will be encountered in the management of this litigation that would preclude its maintenance as a Class and Subclass action. As a result, a Class and Subclass action is superior to other available methods for the fair and efficient adjudication of this controversy.

56. Proper and sufficient notice of this action may be provided to the Class and Subclass members through direct mail and email.

57. The Class and Subclass members' individual damages are insufficient to justify the cost of litigation, so that in the absence of Class and Subclass treatment, Defendant's violations of law inflicting substantial damages in the aggregate would not be remedied without certification of the Class.

58. Absent certification of this action as a Class and Subclass action, Plaintiff and the members of the Class and Subclass will continue to be damaged by the unauthorized release of their PII.

///
///
///
///

# CAUSES OF ACTION

## Count I

### Violations of California Civil Code §§ 1798.80, *et seq.*

59. Plaintiff incorporates by reference all of the above paragraphs of this complaint as if fully stated herein.

60. Defendant is a "business" within the meaning of Cal. Civil Code § 1798.80(a).

61. The credit card application information that Defendant made available through the internet was personal information relating to Defendant's internal customer account or for the purpose of using that information in transactions relating to Plaintiff's and the Class' accounts, specifically for the loaning of credit. Therefore, Defendant "owned" or "licensed" the information as defined by Cal. Civil Code § 1798.81.5(a)(2).

62. All of this information that Defendant owns, licenses, or maintains constitutes "personal information" as defined by 1798.80(e) and 1798.81.5(d), as it contained each Plaintiff's and Class and Subclass members' name, social security number, address, telephone number and income.

63. Plaintiff and Class and Subclass members are natural persons that provided personal information to Defendant for its credit services, and are therefore "Customers" as defined by Cal. Civil Code § 1798.80(c).

64. The exposure of the personal information of millions of Defendant's current and former customers through a misconfiguration in its firewall to an unauthorized third party was a "breach of the security system" of Defendant as defined by Civil Code section 1798.82(g).

65. By failing to implement reasonable security measures appropriate to the nature of the personal information of its current and former customers as described above, Defendant violated Civil Code section 1798.81.5.

66. In addition, by failing to immediately notify all affected current and former customers that their personal information had been acquired (or was reasonably

believed to have been acquired) by unauthorized persons in the Data Breach, Defendant violated Civil Code section 1798.82 of the same title.

67. Defendant's failure to immediately notify its customers of the breach caused Plaintiff and Class and Subclass members to suffer damages because they have lost the opportunity to immediately: (i) buy identity protection, monitoring, and recovery services; (ii) flag asset, credit, and tax accounts for fraud, including reporting the theft of their Social Security numbers to financial institutions, credit agencies, and the Internal Revenue Service; (iii) purchase or otherwise obtain credit reports; (iv) monitor credit, financial, utility, explanation of benefits, and other account statements on a monthly basis for unrecognized credit inquiries, Social Security numbers, home addresses, charges, and/or medical services; (v) place and renew credit fraud alerts on a quarterly basis; (vi) routinely monitor public records, loan data, or criminal records; (vii) contest fraudulent charges and other forms of criminal, financial and medical identity theft, and repair damage to credit and other financial accounts; and (viii) take other steps to protect themselves and recover from identity theft and fraud, such as buying identity theft insurance, which is an out-of-pocket cost.

68. As Defendant violated Civil Code sections 1798.81.5 and 1798.82, Defendant "may be enjoined" under Civil Code section 1798.84(e).

69. Plaintiff requests that the Court enter an injunction requiring Defendant to implement and maintain reasonable security procedures to protect its customers' personal information, including, but not limited to, ordering that Defendant: (1) engage third-party security auditors/penetration testers as well as internal security personnel to conduct testing consistent with prudent industry practices, including simulated attacks, penetration tests, and audits on Defendant's systems on a periodic basis; (2) engage third-party security auditors and internal personnel to run automated security monitoring consistent with prudent industry practices; (3) audit, test, and train its security personnel

regarding any new or modified procedures; (4) purge, delete and destroy, in a secure manner, customer data not necessary for its business operations; (5) conduct regular database scanning and securing checks consistent with prudent industry practices; (6) periodically conduct internal training and education to inform internal security personnel how to identify and contain a breach when it occurs and what to do in response to a breach consistent with prudent industry practices; (7) receive periodic compliance audits by a third party regarding the security of the computer systems Defendant used to store the personal information of its current and former employees; (8) meaningfully educate its current and former employees about the threats they face as a result of the loss of their PII to third parties, as well as the steps they must take to protect themselves; and (9) provide ongoing identity theft protection, monitoring, and recovery services to Plaintiff and Class and Subclass members.

70. Plaintiff further requests that the Court order Defendant to (1) identify and notify all members of the Class and Subclass who have not yet been informed of the data breach; and (2) notify affected current and former customers of any future data breaches by email within 24 hours of Defendant's discovery of a breach or possible breach and by mail within 72 hours.

71. As a result of Defendant's violations of Civil Code §§ 1798.81.5 and 1798.82, Plaintiff and members of the Class and Subclass have incurred and will incur damages, including but not necessarily limited to: (1) the loss of the opportunity to control how their PII is used; (2) the compromise, publication, and/or theft of their PII and the PII of their family members; (3) out-of-pocket costs associated with the prevention, detection, insurance, and recovery from identity theft and/or unauthorized use of financial and medical accounts; (4) lost opportunity costs associated with effort expended and the loss of productivity from addressing and attempting to mitigate the actual and future consequences of the breach, including but not limited to efforts spent

researching how to prevent, detect, contest and recover from identity and health care/medical data misuse; (5) costs associated with the ability to use credit and assets frozen or flagged due to credit misuse, including complete credit denial and/or increased costs to use credit, credit scores, credit reports and assets; (6) unauthorized use of compromised PII to open new financial and/or health care or medical accounts; (7) tax fraud and/or other unauthorized charges to financial, health care or medical accounts and associated lack of access to funds while proper information is confirmed and corrected; (8) the continued risk to their PII, which remain in Defendant's possession and are subject to further breaches so long as Defendant fails to undertake appropriate and adequate measures to protect the PII in its possession; and (9) future costs in terms of time, effort and money that will be expended, to prevent, detect, contest, and repair the impact of the PII compromised as a result of the Data Breach for the remainder of the lives of the Class and Subclass members.

72. Plaintiff seeks all remedies available under Civil Code section 1798.84, including actual and statutory damages, equitable relief, and reasonable attorneys' fees. Plaintiff also seeks reasonable attorneys' fees and costs under applicable law including Federal Rule of Civil Procedure 23; California Code of Civil Procedure § 1021.5; and the Catalyst Theory.

## Count II
## Violations of California's Unfair Competition Law ("UCL"), Bus. & Prof. Code §§ 17200, *et seq*.

73. Plaintiff re-alleges and incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

74. Plaintiff and Defendant are each a "person" as defined by California Business & Professions Code § 17201. California Business & Professions Code § 17204 authorizes a private right of action on both an individual and representative basis.

75. "Unfair competition" is defined by Business and Professions Code § 17200 as encompassing several types of business "wrongs," including: (1) an "unlawful" business act or practice, (2) an "unfair" business act or practice, (3) a "fraudulent" business act or practice, and (4) "unfair, deceptive, untrue or misleading advertising." The definitions in § 17200 are drafted in the disjunctive, meaning that each of these "wrongs" operates independently from the others.

76. Plaintiff and the Classes have suffered economic injury in that, had they known Capital One held the consumers' PII protected only by a misconfigured firewall, Plaintiff and members of the Classes would have utilized a bank with a more secure system.

77. By and through Defendant's conduct alleged in further detail above and herein, Defendant engaged in conduct which constitutes unlawful, unfair, and/or fraudulent business practices, and unfair, deceptive, untrue or misleading advertising, as prohibited by California's UCL.

### A. "Unlawful" Prong

78. Defendant has committed acts of unfair competition, including those described above, by engaging in a pattern of "unlawful" business practices, within the meaning of Bus. & Prof. Code §§ 17200 *et seq.*, by not implement and maintain reasonable security procedures or providing notice after a security breach as required by Cal. Civ. Code § 1798.80, *et seq*.

79. By holding consumer data in violation of those California laws, Defendant engaged in a pattern of "unlawful" business practices within the meaning of California's UCL.

### B. "Unfair" Prong

80. Beginning as of approximately early as 2016, Defendant committed acts of unfair competition as prohibited by Bus. & Prof. Code §§ 17200, *et seq.*

81. Had Plaintiff and the putative Class and Subclass members been informed that Defendant's services actually would place Plaintiff's and the putative Class and Subclass members' personal information in jeopardy, they would not have purchased the service, would have paid less for it, or would have purchased a different product.

82. In other words, Defendant earned the business of Plaintiff and the putative Class and Subclass members by using deceptive representations as the its security, which placed competitors that had spent money on cyber security at a disadvantage.

### C. "FRAUDULENT" PRONG

83. Defendant engaged in acts of unfair competition, including those described above and herein, in violation of Bus. & Prof. Code §§ 17200, *et seq.*, by engaging in a pattern of "fraudulent" business practices within the meaning of Bus. & Prof. Code §§ 17200, *et seq.*, by falsely representing its services as secure, when, in fact, the services were not secure as explained above.

84. Plaintiff reserves the right to allege further conduct that constitutes other fraudulent business acts or practices.

85. In prosecuting this action for the enforcement of important rights affecting the public interest, Plaintiff seeks the recovery of attorneys' fees, which reward is available to a prevailing Plaintiff in a Class and Subclass action such as this.

### Count V

### Negligence

86. Plaintiff realleges and incorporates by reference the allegations contained in each of the preceding paragraphs as if fully set forth herein.

87. In collecting the financial and other personal information of its customers and potential consumers, Defendant undertook and owed Plaintiff and Class and Subclass members a duty to exercise reasonable care in safeguarding and protecting that information. This duty included, maintaining and testing

Defendant's security systems and taking other reasonable security measures to protect and adequately secure the PII of Plaintiff and Class and Subclass members from unauthorized access. Moreover, Defendant was under the duty to timely notify its former and current consumers that their information may have been accessed.

88. Defendant owed a duty of care to Plaintiff and Class and Subclass members because they were foreseeable and probable victims of any inadequate security practices. It was foreseeable that if Defendant did not take reasonable security measures, the PII of Plaintiff and members of the Class and Subclass would be stolen.

89. Major corporations like Defendant face a higher threat of security breaches than smaller companies due in part to the large amounts of data they possess and Defendant knew or should have known its security systems, particularly the firewall on its web application, were inadequate. Yet Defendant failed to take reasonable precautions to safeguard the Plaintiff's and the Class and Subclass members' PII. Even worse, up to the filing of this complaint Plaintiff has not been provided actual notice that their information may have been accessed by third parties. Therefore, Defendant breached the duties it owed to its current and former customers.

90. Under Cal. Civ. Code §§ 1798.80, *et seq*, Defendant was under a statutory duty to protect its customer's information and to notify their customers if this information was compromised. Despite this, Defendant had below average cyber security and it still has not provided any customers with notice of the data compromise. Therefore, Defendant is negligent per se.

91. There is a very close connection between Defendant's failure to employ reasonable security protections of its current and former customers' PII and the injuries suffered by Plaintiff and Class and Subclass members. When

individuals' PII is exposed as occurred here, they are at risk for identity theft and need to preventative measures.

92. But for Defendant's failure to implement and maintain adequate security measures to protect its customers' PII and failure to monitor its systems to identify suspicious activity, the PII of Plaintiff and Class and Subclass members would not have been at risk of theft or stolen, Plaintiff and Class and Subclass members would not have been injured, and Plaintiff and Class and Subclass members would not be at a heightened risk of identity theft in the future.

93. Defendant has acknowledged that 100 million consumers' PII was exposed as a result of its misconfigured firewall. As a result of Defendant's negligence, Plaintiff and members of the Class and Subclass have suffered and will suffer injury, including but not necessarily limited to those listed above.

94. Plaintiff and the Class and Subclass are also entitled to damages and reasonable attorneys' fees and costs. Plaintiff also seeks reasonable attorneys' fees and costs under applicable law including Federal Rule of Civil Procedure 23; California Code of Civil Procedure § 1021.5; and Catalyst Theory.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests the Court grant Plaintiff and the Class and Subclass the following relief against Defendant:

- That the Court determine that this action may be maintained as a Class and Subclass Action by certifying this case as a Class and Subclass Action as to the Class;
- That the Court appoint Plaintiff to serve as the Class and Subclass Representative in this matter and appoint Plaintiff's Counsel as Class and Subclass Counsel;
- That Plaintiff and the Class and Subclass be awarded prejudgment interest, reasonable attorneys' fees, and costs of suit pursuant to Code of Civil

  Procedure § 1021.5 and California Civil Code § 1780, and/or any other applicable law;

- That Defendant's wrongful conduct alleged herein be adjudged and decreed to violate the statutes and laws asserted herein;
- That Plaintiff and the Class and Subclass be awarded injunctive relief prohibiting such conduct in the future;

**For Count I**

**Violations of California Civil Code §§ 1798.80, *et seq*.**

- Costs of Suit;
- An award of actual damages according to proof per violation to each of the named Plaintiff individually and to each member of the Class and Subclass pursuant to Cal. Civ. Code § 1798.84(b); and
- Any and all further relief that this Court deems just and proper.

**For Count II**

**Violations of Cal. Bus. & Prof. Code §§ 17200, *et seq*.**

- Costs of Suit;
- Restitution and injunctive relief pursuant to Bus. & Prof. Code § 17535; and
- Recovery of reasonable attorneys' fees pursuant to, *inter alia*, California Code of Civil Procedure § 1021.5; and
- Any and all further relief that this Court deems just and proper.

**For Count III**

**Negligence**

- Costs of Suit;
- Actual damages;
- Punitive damages;
- Recovery of reasonable attorneys' fees pursuant to, *inter alia*, California Code of Civil Procedure § 1021.5; and

Case #          19 of 20        *Perdew v. Capital One*
**CLASS ACTION COMPLAINT**

- Any and all further relief that this Court deems just and proper.

## TRIAL BY JURY

95. Pursuant to the Seventh Amendment to the Constitution of the United States of America, Plaintiff is entitled to, and hereby demands, a trial by jury on all causes of action and claims with respect to which they have a right to a jury trial.

Dated: July 29, 2019                     **KAZEROUNI LAW GROUP, APC**

                                         By:  */s/ Abbas Kazerounian*
                                               Abbas Kazerounian, Esq.
                                               *Attorneys for Plaintiff*

**Additional Counsel for Plaintiff**

**HYDE & SWIGART**
Robert L. Hyde, Esq. (SBN 227183)
bob@westcoastlitigation.com
2221 Camino Del Rio South, Suite 101
San Diego, California 92101
Telephone: (619) 233-7770
Facsimile:  (619) 297-1022

**LEVIN, PAPANTONIO, THOMAS, MITCHELL, RAFFERTY & PROCTOR, P.A.**
Matt Schultz, Esq. (FL. SBN 640328)
mschultz@levinlaw.com
*Pro Hac Vice to be filed*
Bill Cash, Esq. (FL. SBN 68443)
bcash@levinlaw.com
*Pro Hac Vice to be filed*
Brenton Goodman (FL. SBN 126153)
bvigodsky@levinlaw.com
*Pro Hac Vice to be filed*
316 S Baylen St Ste 600
Pensacola, FL 32502-5996
Telephone: (850) 435-7140
Facsimile:  (850) 436-6140